The decree is therefore reversed, and the complaint dismissed.

---

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* CASTLEBERRY.

Opinion delivered March 27, 1911.

1.  RAILROAD—KILLING STOCK—NEGLIGENCE.—Evidence that an animal ran parallel with a train for 75 or 100 yards before attempting to cross ahead of the train and that no effort was made to stop the train or to frighten the animal justifies a finding of negligence. (Page 444.)

2. Same—failure to post notice—liability.—Under Kirby's Digest, § 6774, imposing a penalty of double damages for failure of a railway company to post notice of the killing of stock, the statute makes it no exception that the owner of the stock had actual notice of its killing. (Page 445.)

Appeal from Clay Circuit Court, Eastern District; *Frank Smith*, Judge; affirmed.

STATEMENT BY THE COURT.

This was a suit for damages for $200 alleged to have been caused by the negligent killing of a gray mare, the property of appellee, by the railroad company, and for the penalty provided by statute, double damages, for the failure to post and keep posted the description of such animal as the law requires.

The answer admitted the killing of the animal, but alleged that it was unavoidable after she was discovered near the track, and denied its failure to post and keep posted notice and description thereof.

The testimony tended to show that the mare was of the value of $200, and was killed by a freight train on defendant's track near Piggott in Clay County, at a place where the track was straight for three-quarters of a mile.

The engineer testified that he had about 45 cars in the train, and was going north at about 15 miles an hour on a pretty heavy up grade, and that when he whistled for the road crossing the mare threw up her head and started towards the crossing; that she ran along with the train some ten car lengths, and was not more than 50 to 75 feet from him when he discovered that she was going to try to cross the track, and then it was too late to stop the train. She was struck by the pilot beam as she crossed the track. That she was not on the dump when she was running parallel, and until she turned to cross he thought she would go the other way. He discovered her when she was something over 600 feet away and 25 or 30 feet from the track at the time with a ditch between her and the track. He first saw her something like 2,000 feet from the track. The fireman testified that he did not see the mare until she was struck, and did not know which side she came from.

Another witness testified that he saw the train strike the mare; that it was running pretty fast; that the whistle was not

sounded nor bell rung before striking her; that the track was straight from the place she was struck to Piggott, a distance of three-quarters of a mile; that she was close to the end of the ties on the east side of the track when he first saw her, and ran along parallel with it 75 to 100 yards, when she attempted to cross and was struck.

Appellee examined the railroad dump about 30 minutes after the mare was killed, and saw the tracks along the ends of the ties for about 75 or 100 yards up to the point where she was struck, and where the tracks stopped.

Appellee testified that he went to the depot with Dr. Martin about a week after the mare was killed and looked in the waiting room, in front of the depot and in the wareroom for a notice, and could find none; that about two days after she was killed he was talking to the section foreman, and he (the section foreman) told him that they had not posted the killing of the animal and did not post them where they notified the owners; that on several occasions through the month of July, for two or three days he looked in the waiting room and about the depot, and there was no notice and description of the animal killed posted.

The section foreman testified that he made a report of the killing of the plaintiff's mare, giving the description, value, etc., upon information which he obtained from Mr. Castleberry, the plaintiff, and the next day after she was killed he gave this description to his son and told him to post it at the depot. The boy testified that he was 11 years old; that he had heard of the killing; that his father gave him the papers and told him to post them at the depot; "that there was a nail which had been driven there by his father, and he tore a hole in the paper and hanged the notice on the nail in the waiting room, and that he posted another one about a hog."

T. L. Davis testified that he went in company with the plaintiff to the depot of defendant to see whether the animal had been posted, and did not see where it had been posted. He saw a notice of "Hog killed" in the southwest corner of waiting room.

The court instructed the jury and submitted the case on interrogatories, which were answered as follows:

"1st. Do you find for the plaintiff? Ans. Yes.

"J. F. Ethridge, Foreman.

"2d.   What was the market value of the mare? Ans. $200.

"J. F. Ethridge, Foreman.

"3d.   Was the notice posted and kept posted?  Ans. No.

"J. F. Ethridge, Foreman."

Thereupon it rendered a judgment for $400, from which this appeal is brought.

*S. H. West* and *J. C. Hawthorne,* for appellant.

1.   The testimony fully exonerates the engineer from negligence or keeping proper lookout.   The law does not require the engineer to anticipate that the animal would undertake to cross the track.   69 Ark. 619; 64 Ark. 236; 37 Ark. 593.   The *prima facie* case of negligence was overcome by positive proof.   The court should have directed a verdict for defendant.   67 Ark. 514; 80 *Id.* 396; 86 *Id.* 190; 89 *Id.* 120.

2.   The posting of the notice met all the requirements of the statute and relieved the company from the penalty.   28 Ark. 372.

*W. L. Castleberry pro se,* for appellee; *L. Hunter,* of counsel.

1.   The *prima facie* case of negligence was not overcome.

2.   The notice required by § 6774, Kirby's Digest, was not posted and kept posted.   39 Ark. 246.

Kirby, J., (after stating the facts).   1.   It is contended here that appellant was not negligent, and that the killing of the animal was unavoidable.

2.   That it complied with the statute by posting a notice and description of the animal killed and incurred no penalty by failure to keep it posted.

I.   The question of negligence of appellant in the killing of the animal was submitted to the jury upon proper instruction, and they found for appellee.   The testimony showed that no effort whatever was made to stop the train, and no warning or alarm given to frighten the animal while she was running down the track parallel with the train for 75 or 100 yards.   It is true the engineer stated that the mare was not close to the track during this time, but he was contradicted by one witness who saw her and by the physical facts of the tracks being near the end of the ties and continuing to the place where the animal was killed.

The testimony was sufficient to sustain the finding of the jury.

II.   It is next contended that no penalty was incurred by the failure to post and keep posted the notice and description of the animal killed as required by section 6774, Kirby's Digest. Said section requires "the conductor or engineer on the train doing the damage shall cause the station master or overseer at the nearest station house to the killing or wounding to post, within one week thereafter, and to keep posted for 20 days thereafter, a true and correct description of such stock as may have been so killed or wounded, at the nearest station house and the nearest depot house, giving a true and correct description of the color, marks, brands, etc., * * * and, on failure to so advertise any stock so killed or wounded, the owner shall recover double damages for all stock so killed and not advertised. * * *"

There was some testimony tending to show that the notice was made out by the section foreman and sent by his eleven-year-old son, who tore a hole in the paper and hanged it on a nail in the waiting room of the depot where such notices were usually posted within a week after the killing.   Two or three witnesses testified that they examined the waiting room within two or three days after the killing and found no such notice posted there, nor anywhere else about the building, and that they examined it every two or three days for 30 days thereafter and saw no such notice posted there.   The purpose of the law was to require the advertising of the killing or injury of the animal, to apprise the owner thereof and assist him in its identification, and it could not be said that the hanging of the paper containing the notice on a nail, without anything else to secure it, as was testified to, was a compliance with the statute.   Such notice could not reasonably be expected to remain posted and advertise the stock killed for the 20 days required, and the testimony conclusively shows that it did not remain posted any length of time if it was posted, and casts a doubt as to whether it was posted at all.   The jury answered the question "Was the notice posted and kept posted?"   "No," and the testimony sustains their finding.

It is true that the testimony shows that the section foreman got the description of the animal killed to put in the notice from the owner, who knew it had been killed, within 20 or 30 minutes after it occurred, and of course, the notice, if it had been posted

in strict compliance with the statute, could not have been of any benefit to apprise the owner of a fact already known to him, but the statute makes the company liable for such failure to advertise stock killed and injured, and makes no exception of "the case of the owner who has actual notice of the injury sustained by him." *Memphis & Little Rock Rd. Co.* v. *Carley*, 39 Ark. 246.

The appellant, having failed to comply with the law in posting and keeping posted for the time required, the description of the animal killed, incurred the penalty denounced by the statute, and the double damages were properly assessed by the court. *Memphis & L. R. Rd. Co.* v. *Carley, supra.*

The judgment is affirmed.